# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER KELLY,** | : | |
| **Individually and on behalf of all others similarly** | : | |
| **Situated,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO.  16-5672** |
| **VERIZON PENNSYLVANIA, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**Mitchell S. Goldberg, J.**                                                      **February 11, 2019**

## <u>MEMORANDUM</u>

Plaintiff Christopher Kelly, the sole named plaintiff in a putative class of individuals, has sued Defendants Verizon Pennsylvania, LLC ("Verizon Pennsylvania, LLC"), Verizon Online Pennsylvania Partnership ("Verizon Online"), and Verizon Pennsylvania ("Verizon Pennsylvania") (collectively, "Verizon" or "Defendants").  Plaintiff claims that Defendants misrepresented to Verizon FiOS Quantum television customers that they must lease multiple set-top boxes in order to access FiOS on multiple televisions in a household.  Plaintiff originally commenced this lawsuit on September 28, 2016, in the Pennsylvania Court of Common Pleas for Philadelphia County.  Defendants timely removed the action on October 31, 2016, under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Plaintiff now seeks to remand the action back to state court.  For the reasons set forth herein, I will deny the Motion.

## I.  FACTUAL BACKGROUND

### A.  <u>Facts Alleged in the Complaint</u>

According to the Complaint, Verizon is a leading provider of television programming, known as "FiOS," supplied to customers across the country, including Pennsylvania. As of February 2016, FiOS was the largest provider of fiber optic broadband in the United States. (Compl. ¶ 1.)

Verizon requires its FiOS customers to lease a "set-top" box for each television to be connected to Verizon's broadband network, and customers are assessed recurring fees for the use of these devices. The set-top boxes provide an input connection for a FiOS cable line and an output connection to a customer's television. Verizon requires customers to use a separate box for each and every television connected to the FiOS network, allegedly to facilitate various functions, such as decoding broadband signals, accessing on-demand content ("ODC"), or utilizing digital video recorder ("DVR") functions. (<u>Id.</u> ¶¶ 2–3.)

In addition to basic FiOS service, Verizon also offers FiOS Quantum TV ("Quantum"), a premium service with increased functionality. Quantum customers have access to the FiOS Mobile App (the "application") that allows Quantum customers to access FiOS service through properly equipped digital devices, such as smart phones, tablets, smart televisions, and computers, and to access live-TV programming, ODC, and DVR functions via digital services that are not connected to a set-top box. In addition, many of these mobile devices are capable of "exporting" the application to secondary mediums, *e.g.*, through a computer that "projects" the desktop screen onto televisions through the use of standardized digital connectors. Therefore, customers using the application or the internet are capable of viewing FiOS content without the use of a device directly connected to a set-top box. (<u>Id.</u> ¶¶ 4–5.)

Plaintiff alleges that Verizon "deceives and confuses" its Quantum customers by remaining silent regarding the availability of set-top box alternatives. Plaintiff explains that Verizon represents that a set-top box connection is *required* to view content on all of its customers' televisions sets. As such, Plaintiff asserts that Verizon has misrepresented to its Quantum customers that multiple set-top boxes must be leased in order to access FiOS on multiple televisions. (Id. ¶ 6.)

**B.    Procedural History**

Plaintiff filed a Complaint in the Philadelphia County Court of Common Pleas, on September 28, 2016, individually and on behalf of a putative class, setting forth two causes of action: (1) a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; and (2) a claim for declaratory judgment.

On October 31, 2016, Defendants filed a Notice of Removal to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Notice alleged that: (a) the putative class consisted of more than 100 members because Verizon Pennsylvania LLC leased more than one set-top box to at least 139,827 customers for FiOS Quantum service at a Pennsylvania residence; (b) the amount in controversy exceeded $5 million because Verizon Pennsylvania LLC leased at least 2,870,014 additional set-top boxes to customers for FiOS Quantum service at a Pennsylvania residence, at $10 per set-top box; and (c) at least one putative class member was a citizen of a state different from at least one defendant because Verizon Pennsylvania LLC and Verizon Online LLC were not citizens of the same state as Plaintiff. (Notice of Removal ¶¶ 10, 12–27.)

On November 30, 2016, Plaintiffs moved to remand this action to state court pursuant to the "local controversy" exception to CAFA. Defendants opposed the Motion, claiming that

Plaintiff did not establish the exception's requirements. I denied the motion without prejudice to refile following the completion of jurisdictional discovery.

Over the course of discovery, Defendants determined that the Notice of Removal mistakenly alleged that Defendant Verizon Pennsylvania LLC owned and leased the set-top boxes to customers. (Defs.' Mot. to Am. Notice of Removal 3.) Defendants explained that, in fact, an entity named Verizon Online LLC actually owned and leased the set-top boxes. (Id. at 3–4.) Accordingly, on July 2, 2018, with leave of Court, Defendants filed an Amended Notice of Removal clarifying that Verizon Online LLC owned and leased the boxes. As Verizon Online LLC was not a named defendant, the Amended Notice of Removal also alleged that originally-named Defendant Verizon Online Pennsylvania Partnership "ceased to exist" because it had merged into Verizon Online LLC in June of 2013. (Am. Notice of Removal ¶ 22.) While the above facts are somewhat convoluted, clarification is important to several jurisdictional questions before me.

On August 1, 2018, Plaintiff filed his Second Renewed Motion to Remand. On December 13, 2018, I held a hearing to consider both the parties' evidence on the issue of whether two-thirds of the putative class were citizens of Pennsylvania, and other issues under CAFA.

## II. STANDARDS UNDER THE CLASS ACTION FAIRNESS ACT

CAFA was enacted "to provide for '[f]ederal court consideration of interstate cases of national importance under diversity jurisdiction.'" Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 149 (3d Cir. 2009) (quoting CAFA § 2, Pub. L. 109-2, 119 Stat. 4). CAFA confers on district courts "original jurisdiction of any civil action" in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members. 28 U.S.C.

§ 1332(d)(2), (d)(5); <u>Standard Fire Ins. Co. v. Knowles</u>, 568 U.S. 588, 592 (2013). In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal. <u>Judon v. Travelers Property Cas. Co. of Am.</u>, 773 F.3d 495, 500 (3d Cir. 2014). The party seeking to remove to federal court bears the burden of establishing the existence of jurisdiction. <u>Kaufman</u>, 561 F.3d at 151.

Once the foregoing requirements are satisfied, CAFA contains two exceptions that obligate a district court to decline jurisdiction where the case involves a uniquely local controversy that does not reach into multiple states. <u>Kaufman</u>, 561 F.3d at 149. The exception at issue here—the "local controversy" exception—mandates that the district court not exercise jurisdiction:

> **(A)(i)** over a class action in which--
>
> **(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> **(II)** at least 1 defendant is a defendant—
>
>> **(aa)** from whom significant relief is sought by members of the plaintiff class;
>> **(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>> **(cc)** who is a citizen of the State in which the action was originally filed; and
>
> **(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> **(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4). The party objecting to federal jurisdiction bears the burden of proof as to the applicability of the local controversy exception. <u>Kaufman</u>, 561 F.3d at 153.

### III.    DISCUSSION

In the context of the current Motion to Remand, the parties dispute (a) whether the case was properly removed to federal court under CAFA, and (b) whether the case must be remanded to state court under the local controversy exception.  Cognizant of the parties' respective burdens of proof, I address each dispute individually.

### A.  Whether Removal Under CAFA Was Proper

As noted above, CAFA original jurisdiction has three components:  (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) a class consisting of at least 100 or more members.  Only the second requirement—whether the parties are minimally diverse—is in dispute.

CAFA's minimal diversity requirement is an exception to the "complete diversity" required by 28 U.S.C. § 1332(a).  Whitaker v. Herr Foods, 198 F. Supp. 3d 476, 483 (E.D. Pa. 2016).  Under the "minimal diversity requirement," CAFA provides that diversity is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A); see also Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 736, 740 (2014) (quotations omitted).  The removing party bears the burden of proving minimal diversity by a preponderance of the evidence.  Papurello v. State Farm Fire & Cas. Co., 144 F. Supp. 3d 746, 755 (W.D. Pa. 2015).

Here, the parties do not dispute that the named Plaintiff is a Pennsylvania citizen.  As such, for purposes of minimal diversity, one of the named Defendants must be a citizen of a state other than Pennsylvania.  As noted previously, three separate entities were originally named as defendants in the Complaint, as follows:

> 14.    *Defendant Verizon Pennsylvania, LLC*, is a limited liability
> corporation organized and existing under the laws of the state of

Delaware with its service address listed as c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.

15. *Defendant, Verizon Online Pennsylvania Partnership*, is a partnership and unincorporated business entity organized and existing under the laws of Pennsylvania, with a registered address of: 1095 Avenue of the Americas, New York, NY 10036. The partnership has two owners of record: (1) Verizon North, Inc. (now known as "Frontier North, Inc.", a business corporation incorporated in Wisconsin whose registered address is: 3 High Ride Park, Stamford, CT 06905-1337; and (2) Verizon Pennsylvania, Inc., a business corporation incorporated in Pennsylvania, with a registered address of: c/o CT Corporation, Two Commerce Square, 2001 Market Street, 5th Floor, Philadelphia, PA 19103.

16. *Defendant, Verizon Pennsylvania*, is an unincorporated business entity organized and existing under the laws of Pennsylvania whose registered address is: 1717 Arch Street, Philadelphia, PA 19103. The entity has one owner of record: Bell Atlantic Pennsylvania, Inc., which is a previous corporate name of "Verizon Pennsylvania, Inc.," (previously described above as an owner of Verizon Online Pennsylvania Partnership) a business corporation incorporated in Pennsylvania, with a registered address of: c/o CT Corporation, Two Commerce Square, 2001 Market Street, 5th Floor, Philadelphia, PA 19103.

(Compl. ¶¶ 14–16 (emphasis added).) According to these allegations: (a) Verizon Pennsylvania, LLC would be a citizen of both Delaware and Pennsylvania;[1] (b) Verizon Online Pennsylvania Partnership would be a citizen of Pennsylvania and New York;[2] and (c) Verizon Pennsylvania

---

[1] For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

[2] As a general rule, the citizenship of a partnership is generally determined by the citizenship of its partners or members, and the state of organization and principal place of business are legally irrelevant. See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104–05 (3d Cir. 2015). Nonetheless, a partnership is deemed an "unincorporated association" which would, for purposes of 28 U.S.C. § 1332(d)(10), make its citizenship dependent on its state of organization and principal place of business. Regardless, of which rule applies, Verizon Online Pennsylvania Partnership would, at minimum, be a Pennsylvania citizen under the allegations in the Complaint.

would be a citizen of Pennsylvania.[3]  On the face of the Complaint, all three of the Defendants appear to have Pennsylvania citizenship, which would defeat minimal diversity because Plaintiff and the Defendants are not from different states.

The inquiry does not, however, end at this juncture.  In the Amended Notice of Removal, Defendants allege that Verizon Online Pennsylvania Partnership was merged into an entity called Verizon Online LLC in June 2013, and ceased to exist as of that date.  (Am. Notice of Removal ¶14.)  Defendants further allege that the surviving entity, Verizon Online LLC, is a Delaware limited liability company and maintains its principal place of business in New Jersey.  (Id. ¶ 14.) These facts are undisputed.  Under well-settled law, when two or more corporations merge, "the citizenship of the surviving entity is controlling; the citizenship of the predecessor company becomes irrelevant."  13F Charles A. Wright et al., Federal Practice and Procedure § 3623 (3d ed. 2009).  Thus, the controlling citizenship for purposes of Verizon Online Pennsylvania Partnership would be that of Verizon Online LLC, which is a citizen of both Delaware and New Jersey, and not of Pennsylvania.

In an effort to avoid the resulting minimal diversity, Plaintiff posits that the Defendant Verizon Online Pennsylvania Partnership originally named in the Complaint was not the partnership entity that actually merged into Verizon Online LLC.  More specifically, while Plaintiff concedes that another entity—a Delaware partnership named Verizon Online Pennsylvania Partnership—existed at some point and was absorbed by Verizon Online LLC in a 2013 merger, he urges that that organization is not the entity that he intended to name as a Defendant.  Rather, Plaintiff contends that the actual named Defendant, "Verizon Online Pennsylvania Partnership," is simply a "fictitious name" registered in Pennsylvania, pursuant to

---

[3]     See supra, n.1.

54 Pa.C.S. § 311, to two owners-of-records:  Verizon Pennsylvania, Inc. and Verizon North, Inc.  According to Plaintiff, his Complaint identifies this fictitious name as the Defendant, explicitly referencing the identical registered address and locus of creation that appears on documents maintained by the Pennsylvania State Department.  Because the fictitious name "Verizon Online Pennsylvania Partnership" has Pennsylvania citizenship, Plaintiff claims that minimal diversity is absent.

Plaintiff's subjective representation of who he intended to name, however, does not cabin the analysis of what entity was actually named in the Complaint.  To the contrary, a court retains discretion to independently evaluate evidence regarding disputes over jurisdictional facts.  CNA v. U.S., 535 F.3d 132, 140 (3d Cir. 2000).  Considering the evidence submitted by the parties, I find, for multiple reasons, that the Complaint actually named the partnership Verizon Online Pennsylvania Partnership, and not the fictitious name "Verizon Online Pennsylvania Partnership."

Primarily, paragraph fifteen of the Complaint describes Verizon Online Pennsylvania Partnership as "a partnership and unincorporated business entity."    Had Plaintiff truly intended to sue just the fictitious name of Verizon Pennsylvania, LLC, he would have referred to it as a "fictitious name," not as a "partnership and unincorporated business entity," which has a specific connotation of being a separate legal entity.  See 15 Pa. Cons. Stat. § 8421(a) ("A partnership is an entity distinct from its partners.").

Second, the same paragraph of the Complaint states that this entity is "organized and existing under the laws of Pennsylvania."  Pennsylvania statutes provide that while a limited liability company is "organized" as a separate entity and a partnership is "formed" as a separate entity, see 15 Pa. Cons. Stat. §§ 8221, 8422, a fictitious name is "registered" and does not exist as a separate entity.  See 54 Pa. Cons. Stat. § 311.  Consequently, by describing Verizon Online

Pennsylvania Partnership as "organized," Plaintiff suggests that he intended to name an independent entity and not just a fictitious name.

Third, and along the same lines, the Complaint refers to the Defendants as three separate entities, a representation Plaintiff repeated in his Motion to Remand. (See Pl.'s Mem. Supp. Mot. to Remand 9 ("Plaintiff named three separate entities in the Class Action Complaint.").) It is established that an LLC and its fictitious name are not separate entities; rather "the rights and liabilities incurred under the fictitious name are the rights and responsibilities of the corporate entity." Wasson v. Hi-Ranger, Inc., No. 92-3053, 1994 WL 194378, at *2 (E.D. Pa. 1994) (quotations omitted). Had Plaintiff intended to sue Verizon Pennsylvania, LLC and its fictitious name, along with Verizon Pennsylvania, the Complaint and Plaintiff's subsequent briefing would have logically referred to two entities.

Fourth, Plaintiff states that he intended to sue "Verizon Online Pennsylvania Partnership" because that name was expressly included on the contract signed by Plaintiff. (Pl.'s Reply Br. 2 (citing Pl.'s Mot. to Remand, Ex. W, at Ex. A).) But a careful review of the document in question undermines Plaintiff's position that this name is simply the fictitious name of Verizon Pennsylvania, LLC. Exhibit A of that contract contains a chart with two columns for each state, indicating: (a) which entity is the "Verizon affiliate providing video service" and (b) which entity is the "Verizon internet service affiliate providing equipment." The entity listed as the affiliate providing internet service in Pennsylvania is Verizon Pennsylvania LLC, and the entity listed as the affiliate providing equipment in Pennsylvania is Verizon Online Pennsylvania Partnership. If Verizon Online Pennsylvania Partnership was simply the fictitious name of Verizon Pennsylvania LLC, the contract would have listed them as the same entity, rather than separating them into two different columns with two different entity names.

Finally, Defendants have offered unrebutted Rule 30(b)(6) testimony clarifying that the entity listed on the customer contract as providing equipment was, in fact, the partnership that merged into Verizon Online LLC. Veronica Glennon, the Assistant Secretary of Verizon Corporate Resources Group, testified as follows:

> Q. . . . So, although [the contract] says Verizon Online Pennsylvania Partnership, the Verizon internet service affiliate providing equipment that's listed here . . . is now Verizon Online, LLC?
> A.     Correct.
> Q.     In August of 2014, had the merger already taken place to create, to merge Verizon Online Pennsylvania Partnership into Verizon Online, LLC?
> A.     Yes.
> Q.     Okay. So, it should actually say on both of these documents . . . Verizon Online, LLC?
> A.     Correct.

(Pl.'s Mot. to Remand, Ex. C, Dep. of Veronica Glennon, 74:9–24.) Thus, it seems clear that if Plaintiff intended to name as Defendants the entities listed in the contract, he must have intended to name the partnership—Verizon Online Pennsylvania Partnership—that was merged into Verizon Online LLC.

The partnership entity "Verizon Online Pennsylvania Partnership" was named as a Defendant in the Complaint, and, as set forth above, Verizon Online Pennsylvania Partnership merged into Verizon Online LLC prior to the filing of the Complaint, making the latter entity's citizenship controlling for purposes of jurisdiction. Verizon Online LLC is a citizen of Delaware and New Jersey, which is diverse from Plaintiff's Pennsylvania citizenship. Because the parties do not dispute that the remaining requirements for CAFA original jurisdiction are satisfied, this case was properly removed to federal court.

## B. **The Local Controversy Exception**

Once CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show, by a preponderance of the evidence, that an exception applies and remand is required. Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009). Plaintiff here seeks remand under the "local controversy exception" of 28 U.S.C. § 1332(d)(4).

> A party seeking to invoke the local controversy exception must show that:
>
> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

Id. at 506–07. "These elements ensure that the exception is invoked when the class is primarily local, the lawsuit is against 'at least one real in-state defendant whose alleged conduct is central to the class claims and from whom the class seeks significant relief,' the injuries the defendant allegedly caused occurred within the forum, and no other similar class actions have been filed against any of the defendants." Id. at 507 (quoting 151 Cong. Rec. S999–02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter)). The court "may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies." Id. at 503 n.1.

CAFA's legislative history suggests that "Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" Evans v. Walter Indus., Inc., 449 F.3d 1159, 1163 (11th Cir. 2006) (quotations omitted). "The local controversy exception seeks 'to identify a truly local controversy—a controversy that

uniquely affects a particular locality to the exclusion of all others.'" <u>Vodenichar v. Halcon Energy Props.</u>, 733 F.3d 497, 508 n.11 (3d Cir. 2013) (quoting 151 Cong. Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005)).

The parties here dispute three of the aforementioned elements of the local controversy exception:  (1) whether more than two-thirds of the putative class are citizens of Pennsylvania; (2) whether the local defendant's conduct forms a "significant basis" for the claims asserted; and (3) whether the plaintiffs are seeking "significant relief" from the local defendant.  Plaintiff bears the burden of proving *all* of the elements of the local controversy exception.  As I find that Plaintiff here has failed to meet his burden as to the "significant basis" element, I will focus my discussion solely on that element.[4]

The "significant basis" element—*i.e.*, whether the local defendant's conduct forms a significant basis for the claims asserted—has been addressed in some detail by the United States Court of Appeals for the Third Circuit in <u>Kaufman v. Allstate New Jersey Ins. Co.</u>, 561 F.3d 144 (3d Cir. 2009).  There, the court held that "the significant basis provision requires at least one local defendant whose alleged conduct forms a significant basis for all the claims asserted in the action." <u>Id.</u> at 155.  The Third Circuit reasoned that this "does not imply that the significant basis provision requires every member of the proposed plaintiff class to assert a claim against the local defendant—and the provision certainly does not state such a requirement.  Instead, it requires that 'at least 1 [local] defendant is a defendant . . . whose alleged *conduct* forms a significant basis for

---

[4]    I recognize that the parties have taken extensive discovery regarding the two-thirds element, and that a hearing was held.  I also note that there is a vigorous ongoing dispute as to the admissibility and sufficiency of the evidence produced on this issue. The record in this case, at this point, is still unclear as to whether two-thirds of the proposed class members are citizens of Pennsylvania.  Nonetheless, because Plaintiff has failed to meet his burden on the "significant basis" element, I need not make any definitive ruling or otherwise sort through the remaining evidentiary morass on this issue.

the claims asserted by the proposed plaintiff class.'" Id. (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II) (emphasis added)). "The plain text of this provision relates the alleged conduct of the local defendant, on one hand, to all the claims asserted in the action, on the other." Id. The analysis is not quantitative. Id. "[A] party's conduct may form a significant basis of an entire set of claims even if some claims within the set are not based on that conduct. Id. at 156. In other words, if the local defendant's alleged conduct is a significant part of the alleged conduct of all the defendants, then the significant basis provision is satisfied. Id.

The Third Circuit has suggested nine non-exclusive areas of inquiry for determining if the alleged conduct of the local defendant provided a significant basis for the asserted claims:

> By way of example, the District Court could, on remand, inform its comparison of the local defendant's alleged conduct to the alleged conduct of all the Defendants by considering such possible areas of inquiry as: 1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the Defendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the Defendants; 7) whether the Defendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes. Whether the District Court considers any or all of these factors, it must in every case still provide a reasoned analysis that focuses on the conduct of the Defendants—local and non-local—as alleged in the complaint.

Id. at 157 n.13.

Here, on the basis of the pleadings alone, it appears that Verizon Online LLC—who is not a Pennsylvania citizen—is allegedly responsible for the conduct at issue in this case. The crux of the Complaint claims that Defendants violated Pennsylvania law by, in part, requiring customers to lease a separate set-top box for each television the customer wishes to connect to the FiOS network and improperly assessing monthly fees for the multiple set-top boxes without disclosing

the availability of alternatives.  (Compl. ¶¶ 55.)  The Amended Notice of Removal[5] alleges that Verizon Online LLC leased the set-top boxes associated with FiOS Quantum services at Pennsylvania residences.  (Am. Notice of Removal ¶ 22.)  As Verizon Online LLC is the entity responsible for the set-top boxes, its conduct forms the "significant basis" for Plaintiff's claims, as compared to the conduct of local Defendant of Verizon Pennsylvania, LLC.

Nonetheless, the jurisdictional inquiry does not end at review of the pleadings, but also permits the parties to establish or disprove jurisdictional facts through an evidentiary showing. Having engaged in a lengthy period of jurisdictional discovery, Plaintiff now offers multiple arguments in support of his position that Verizon Pennsylvania LLC's conduct actually forms the "significant basis" of the underlying claims.  Upon careful review of these arguments, I find that none have merit.

First, Plaintiff contends that merely focusing on the ownership and leasing of the set-top boxes disregards the fact that Verizon Pennsylvania, LLC is the exclusive party to Verizon's hundreds of municipal cable franchising agreements throughout the Commonwealth.  Plaintiff urges that Verizon Pennsylvania, LLC is the only entity that is permitted to sell Verizon FiOS to Pennsylvania customers.  In the absence of Verizon Pennsylvania LLC's franchise agreements, Plaintiff urges that Verizon would be unable to market Verizon FiOS or rent set-top boxes to its Pennsylvania customers.

---

[5]     Plaintiff repeatedly cites to the initial Notice of Removal, which alleged that "*Verizon Pennsylvania, LLC* has charged more than 100 customers for multiple set-top boxes in connection with residential FiOS Quantum services in Pennsylvania," (Notice of Removal ¶ 12 (emphasis added).)  That Notice, however, was validly amended, with leave of Court, to allege that *Verizon Online LLC* leases the set-top boxes.  As the later pleading controls, I need not consider the representations in the original Notice of Removal.

Contrary to Plaintiff's argument, however, the "significant basis" prong focuses not on tangential conduct by the local defendant that serves as the conduit through which the primary defendant acted, but rather on the actual conduct that underscores the claims in the complaint. See S. Rep. 109–14, at 40 (2005) ("[T]he local defendant must be a primary focus of the plaintiffs' claims—not just a peripheral defendant."). Two cases aptly illustrate this principle. First, in <u>Livi v. Hyatt Hotels Corp.</u>, No. 15-5371, 2017 WL 5128173 (E.D. Pa. Nov. 6, 2017), the plaintiffs, a putative class of hotel banquet servers, brought a class action for unpaid wages against (a) the Hyatt Corporation, a non-local defendant, and (b) another Hyatt entity, Bellvue, Inc., which was a local defendant. <u>Id.</u> at *2–3. The case was removed to federal court under CAFA and the plaintiffs sought a remand based upon the local controversy exception. <u>Id.</u> at *3–4. The jurisdictional discovery revealed that Hyatt Corporation was the entity that hired, supervised, and paid the putative class members, while Bellvue, Inc. was simply the owner of the hotel in which the plaintiffs worked. <u>Id.</u> at *5. The court declined to find the significant basis element satisfied because "the entity whose alleged conduct form[ed] the basis of the asserted claims [was] Hyatt Corporation, an out-of-state defendant." <u>Id.</u> Rejecting the plaintiff's argument that Hyatt Corporation could not act without the conduct of the local defendant Bellvue, in owning the hotel, the court determined that the conduct of Bellvue Inc. was "not a significant part of the alleged conduct of all Defendants nor an important ground for the asserted claims." <u>Id.</u>

Similarly, in <u>Garcia v. Tempoe, LLC</u>, No. 17-2106, 2017 WL 6521372 (D.N.J. Nov. 15, 2017), <u>report and recommendation adopted by</u>, 2017 WL 6514148 (D.N.J. Dec. 19, 2017), a putative class brought claims alleging violations of New Jersey consumer protection laws in connection with rent-to-own contracts for furniture and appliance. <u>Id.</u> at *1. The class complaint alleged that the standard financing agreements in these contracts were in violation of usury and

consumer protection laws.  Id. at *1–2.  Plaintiffs brought suit against multiple defendants, including:  Tempoe (a non-local defendant who leased the furniture and supplied the financing agreement); and several New Jersey furniture stores (local defendants from whom the class plaintiffs purchased furniture).  Id. at *2.  The claims asserted against the local defendants "allege[d] essentially that they were the mechanism through which Tempoe was able to enter into the unlawful Lease Agreements with plaintiffs."  Id. at *6.  The court found that such actions were not the significant basis for plaintiffs' claims.  Rather, the complaint focused on determining the legality of the lease agreements and the consequences of their allegedly unlawful provisions, rather than on the means by which Tempore or the furniture stores entered into or marketed the lease agreements.  Id.  In turn, none of the claims relied on the local defendants' alleged conduct.  Id.

Here, the relevant conduct is not Verizon Pennsylvania, LLC's general provision of FiOS television services throughout Pennsylvania under municipal franchising agreements.  Indeed, Plaintiff's Complaint makes no claim that these municipal franchising agreements are improper or that the mere provision of the television services somehow violated Pennsylvania law.  Rather, the Complaint focuses quite specifically on the leasing of set-top boxes and the alleged misrepresentations related to the number of set top boxes required to access Quantum FiOS television.  (Compl. ¶¶ 3, 6.)  Consequently, the conduct of the entity that engaged in the actual leasing of the set-top boxes constitutes the significant basis of the underlying claims.  The provision of the FiOS television services—similar to the ownership of the hotel in Livi and the sale of furniture in Garcia—is simply the tangential conduit through which the alleged improper

conduct occurred.[6]  See Kaufman, 561 F.3d 144, 157 ("We also reject the assumption that the local

defendant's conduct is significant as long as it is 'more than trivial or of no importance.'").

Plaintiff's second argument posits that the contracts at issue—those in which the set-top

boxes are leased—are between Verizon customers and Verizon Pennsylvania, LLC, not Verizon

Online LLC.  These contracts provide that "[t]his Agreement sets forth the terms and conditions

under which you the subscriber . . . agree to use Verizon Fios TV (the "service," including

Equipment and Programming) and under which the Verizon affiliates ("Verizon," "us" or "we,")

identified in [an attached exhibit] agree to provide Fios TV to you."  The affiliate list attached to

the contract states that "Verizon [Pennsylvania] is solely responsible for providing 'VIDEO

SERVICE,'" while Verizon Online Pennsylvania Partnership is responsible for providing

"EQUIPMENT."[7]

This argument is also meritless because, again, it is not the contractual provision of FiOS

video services that is the focus of Plaintiff's claims, but rather the provision of the equipment, *i.e.,*

the set-top boxes.  Plaintiff has identified no evidence establishing that Verizon Pennsylvania,

LLC, the local defendant, marketed and/or leased set top boxes to customers.

By contrast, Defendants have produced ample evidence to establish that Verizon Online

LLC, not Verizon Pennsylvania LLC, owns and leases set-top boxes to members of the putative

---

[6]  Plaintiff argues that Verizon is a "pivotal corporate entity" associated with FiOS television service throughout the Commonwealth of Pennsylvania." (Pl.'s Mem. Supp. Mot. for Remand 20.)  The Third Circuit, however, has rejected the notion that the percentage of a particular market's share possessed by a defendant makes that defendant "significant."  Kaufman, 561 F.3d at 157.  Rather, the focus must be on the alleged conduct which "must always be assessed in comparison to the alleged conduct of all the Defendants."  Id. at 157.

[7]  Plaintiff remarks that the contracts continue to name Verizon Online Pennsylvania Partnership, even though that entity allegedly ceased to exist after the merger in June 2013.  As set forth above, however, Verizon's Rule 30(b)(6) deponent, Victoria Glennon, explained that this was simply an oversight in amendment of the contract.  (Glennon Dep. 74:9–24.)

class.  In a January 4, 2017 affidavit, the Assistant Secretary of Verizon Online LLC, Daniel

Mason, attests to the fact that Verizon Online LLC (as successor-in-interest to Verizon Online

Pennsylvania Partnership) owns, leases, and receives the revenue from the Verizon-branded set-

top boxes leased to all Verizon FiOS with Quantum television subscribers throughout the United

States.  (Pl.'s Mot. for Remand, Ex. D, Aff. of Daniel Mason.)  Defendants' Rule 30(b)(6)

designee, Douglas Smith, provided more insight on the respective roles of Verizon Pennsylvania,

LLC and Verizon Online LLC:

> A. The purpose of Verizon Pennsylvania is to provide the field forces necessary to install the fiber and copper infrastructure in the state of Pennsylvania as well as installing and maintaining fiber optic and copper services to residents and business customers in the state of Pennsylvania.
>
> . . .
>
> Q. Can you elaborate then on what exactly it means for – I believe you said installation of services?
> A. Verizon Pennsylvania and its technician forces install the infrastructure of both fiber and copper networks in the state of Pennsylvania.  It is those networks that provide voice, data, and video services across the state.
> Q. And is Verizon Pennsylvania, LLC responsible for providing any equipment to its customers?
> A. No.
> Q. No equipment whatsoever?
> A. No equipment to customers.
>
> . . .
>
> Q. . . . [W]hat does this company [Verizon Online LLC] do?  What does this entity do, I should say?
> . . .
> A. Verizon Online, LLC *is the provider of internet services, owns the set-top boxes, leases the set-top boxes for FiOS as well*.
> . . .

(Pl.'s Mot. for Remand, Ex. F, Dep. of Douglas Smith, 28:19–30:4, 74:13–21, 87:1–88:12

(emphasis added).)  Finally, Verizon corporate designee Courtney Macuszonok, CPA confirmed

that "[a]ll set-top boxes are owned by Verizon Online, LLC" and Verizon Online LLC recognizes

the revenue for all set-top box rentals. (Pl.'s Mot. for Remand, Ex. G, Dep. of Courtney Macuszonok 38:16–24., 59:2–5.)

Without affirmatively rebutting this testimony, Plaintiff attempts to identify flaws in Defendants' proof regarding the ownership and leasing of the set-top boxes. He suggests that nothing in Defendants' corporate deponents' testimony clearly indicates either that Verizon Online LLC was the sole "responsible" corporate entity or that it leased the boxes directly to the consumers.[8] (See Pl.'s Mem. Supp. Mot. to Remand 21–22; Pl.'s Reply Br. 8–9.) This argument, however, is misplaced given that the well-settled law does not require Defendants to definitively prove that the conduct of a non-local Defendant constitutes the basis for Plaintiff's claims. Rather, the onus falls squarely on Plaintiff to prove that local Defendant Verizon Pennsylvania, LLC took actions that form the significant basis for this matter. Having failed to produce any evidence that Verizon Pennsylvania had any involvement in provision, leasing, or collection of revenue from the lease of set-top boxes, Plaintiff has failed to meet that burden.

In his third argument, Plaintiff argues that it is not the actual leasing of the set-top boxes that forms the basis of his legal claims, but rather the representations on the Verizon website regarding the number of boxes required. To that end, however, Plaintiff has not produced any evidence demonstrating that local Defendant Verizon Pennsylvania, LLC—or any named Defendant for that matter—played any role in this conduct. To the contrary, the testimony from Verizon's Rule 30(b)(6) deponent reveals that these alleged misrepresentations fell within the purview of a wholly different entity:

---

[8]   For example, in his Reply Brief, Plaintiff argues that "[d]espite claiming, *ad nauseam*, that Verizon Online, LLC is solely responsible for all leasing activities related to its set-top boxes ("STBs"), Verizon has not produced any agreements attesting to such singular privity of contract between Verizon Online LLC and the Class, or even discrete lease terms." (Pl.'s Reply Br. 8–9.)

> Q, Does Verizon Pennsylvania, LLC, are they in charge of any portions of the Verizon website?
>
> A. No, ma'am. Verizon Pennsylvania, LLC doesn't get involved with set-top boxes when it comes to the leasing. All they do is develop the infrastructure.
>
> Q. No. Just – is Verizon Online, LLC – sorry. Does Verizon Pennsylvania – is Verizon Pennsylvania, LLC, do they get involved with any sort of customer guidance or any other portions of the Verizon Online website?
>
> A. You have to describe to me what customer guidance is again. That could be any number of things.
>
> Q. Do they get involved in any portion of the website?
>
> A. No. Verizon Pennsylvania, LLC does not get involved in the developing or implementation of the website.
>
> Q. Does Verizon Online, LLC get involved in any portion of the Verizon Online website?
>
> A. I do not believe so.
>
> Q. If I were to call – if I were a potential Verizon customer and I were to call Verizon as opposed to going on their website and ordering Verizon services through the phone, who – what department would I be connected with?
>
> A. You would get one of our call centers located around the country.
>
> Q. And where do they fit into – in terms of the corporate structure? What part are they?
>
> A. They are not part of Verizon Online. They're going to be captured under the Verizon Services Organization. And, again, there's another food chain entirely that would capture their activities.

(Pl.'s Mot. for Remand, Ex. F, Dep. of Douglas Smith, 87:1–88:12.) The witness further explained that Verizon Services Organization handles things like payroll, advertising, marketing, and other common administrative functions. (Id. at 18:18–19:1.) He went on to indicate that the online ordering component for Quantum FiOS, including all the copy for and maintenance of the website, was handled entirely by Verizon Services Organization. (Id. at 84:9–85:17.) Even if a customer were to go through a call center, rather than the online ordering website, that customer would still deal with Verizon Services Organization. (Id. at 87:23–89:15.)

Finally, Plaintiff asserts that he "is seeking to hold Verizon PA, alone, liable for permitting, promoting, and advancing misrepresentations to Pennsylvania consumers" and that such misrepresentations "if vindicated . . . would extract a significant financial toll upon Verizon PA." (Pl.'s Reply Br. 10.) For obvious reasons, the mere intent to hold a defendant liable for certain claims does not equate with a showing that the conduct of that defendant formed a significant basis for those claims. Defendants have pointed to actual evidence, not hyperbole, establishing that non-local Defendant, Verizon Online, LLC, bears the responsibility for leasing of and collection of revenues from the set-top boxes.

In short, Plaintiff has not met his burden of proving that the local Defendant, Verizon Pennsylvania, LLC—as compared to non-local Defendant Verizon Online LLC—engaged in any conduct that constitutes a significant basis of the claims set forth in the Complaint. Although Verizon Pennsylvania, LLC's name appears on the contracts with customers as the provider of FiOS services, those services are not at issue. Rather, it is the marketing and leasing of the set-top boxes—conduct for which Verizon Pennsylvania, LLC appears to have no responsibility—that forms the crux of the Complaint. As the Third Circuit requires consideration of the significance of the local defendant's alleged conduct "in comparison to the alleged conduct of all the Defendants," I cannot find that the "significant basis" prong of the local controversy exception of CAFA has been satisfied.

If a party seeking to invoke the local controversy exception has not met its burden with respect to one element, then the exception does not apply and "it is unnecessary to examine the remaining elements of the local controversy exception." Ellis v. Montgomery Cty., 267 F. Supp. 3d 510, 516 (E.D. Pa. 2017); see also Smith v. Honeywell Int'l, Inc., No. 10-3345, 2013 WL 2181277, at *4 (D.N.J. May. 20, 2013) (declining to address other elements of the local

controversy exception where plaintiffs failed to produce facts to support that two-thirds of putative class members were local citizens).  Accordingly, I find that the local controversy exception to CAFA jurisdiction does not apply.

As noted above, the local controversy exception seeks to "identify a truly local controversy" that affects a particular locality to the exclusion of all others.  <u>Vodenichar</u>, 733 F.3d at 508, n.11.  Plaintiffs admit that Defendants' provision of FiOS services, together with set-top boxes, occurs with customers across the country and is not unique to Pennsylvania.  (Compl. ¶¶ 1–3.)  Narrowly construing the exception with all doubts in favor of exercising jurisdiction, I will deny the Motion for Remand.